AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>DARIUS EZEKIEL PEARSON,<br><br>Defendant(s) | Case No. 2:24-mj-02911-DUTY |

**FILED**
CLERK, U.S. DISTRICT COURT
5/17/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ts _____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 16, 2024 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Kaitlyn Laflash, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 17, 2024

Judge's signature

City and state: Los Angeles, California

Hon. Stephanie S. Christensen, U.S. Magistrate Judge
Printed name and title

AUSA: Danbee C. Kim (x6530)

**AFFIDAVIT**

I, Kaitlyn Laflash, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Darius Ezekiel PEARSON ("PEARSON"), for a violation of 21 U.S.C. § 841(a)(1): possession with intent to distribute a controlled substance.

2. This affidavit is also made in support of an application for a warrant to search the following digital devices (collectively, the "SUBJECT DEVICES"), in the custody of the DEA Los Angeles Field Division in Los Angeles, California, as described more fully in Attachment A:

   a. One black iPhone smartphone presently held by the Los Angeles Field Division Evidence Custodian with an unknown serial number due to the device being locked. ("SUBJECT DEVICE 1") and

   b. One black iPhone smartphone with a black cover case presently held by the Los Angeles Field Division Evidence Custodian with an unknown serial number due to the device being locked ("SUBJECT DEVICE 2").

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 21 U.S.C. § 846 (conspiracy and attempt to distribute controlled substances)

(the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only and all dates and times are on or about those indicated.

## II. INTRODUCTION

5. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and have been so employed since December 2023. I am currently assigned to the DEA's Los Angeles Field Division, Enforcement Group 4, which is comprised of agents assigned to investigate largescale drug trafficking. During the course of my employment with the DEA, I have received several hundred hours of comprehensive, formal instruction on topics such as drug identification, money laundering techniques, patterns of drug trafficking, complex conspiracies, the exploitation of drug traffickers' telecommunications devices, surveillance, and other investigative techniques. I have assisted in investigations into the unlawful importation, manufacture, possession with intent to distribute, and

distribution of drugs and other controlled substances, and conspiracies involving drugs and controlled substance offenses. I have been involved in drug-related arrests that resulted in the seizure of drugs and other evidence. I have used a variety of investigative techniques and resources, including, but not limited to, surveillance, confidential sources, undercover operations, telephone toll analysis, and wire intercept communications analysis in Title III wiretap investigations.

6. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics, and the collection and transferring of money which represents the proceeds of narcotics trafficking and money laundering.

### III. **SUMMARY OF PROBABLE CAUSE**

7. On May 16, 2024, DEA Special Agents (SAs) executed a federal arrest warrant for Jason Alton McDonald for aiding and abetting the distribution of narcotics. SAs also had a federal search warrant for what was known to be McDonald's stash house located at 4557 W. Adams Blvd, Los Angeles, California. After executing the arrest warrant and reading McDonald his Miranda Rights, McDonald told agents that he had recently packaged a box with 20 pounds of crystal methamphetamine and that it was still at his stash house.

8. Agents set up surveillance at the stash house and observed PEARSON enter the location, exit with a large box, re-enter the location, and exit for a second time with another box. Agents retrieved the boxes and found one box contained ninety

thousand to one hundred thousand suspected fentanyl pills and one box contained over 21 pounds of suspected crystal methamphetamine. After waiving his Miranda Rights, PEARSON stated, in pertinent part, (1) that he was at the location to "clean out the business" due to McDonald being arrested, (2) that he knew the boxes contained controlled substances, and (3) that he was a small level dealer.

## IV. STATEMENT OF PROBABLE CAUSE

9. Based on my training and experience, review of law enforcement reports, conversations with other DEA and LAPD law enforcement agents, and my own participation in this investigation, I know the following:

10. On May 9, 2024, the Honorable Jean Rosenbluth, U.S. Magistrate Judge, authorized a federal arrest warrant (2:24-mj-0271) for Jason Alton McDonald ("McDonald") and a federal search warrant (2:24-mj-02754) for 4557 W. Adams Blvd, Los Angeles, California based on a probable cause finding that McDonald committed the crime of aiding and abetting the distribution of narcotics and utilized 4557 W. Adams Blvd, Los Angeles, CA as a drug stash house.

    a. Specifically, on April 9, 2024, McDonald was seen exiting 4557 W. Adams Blvd with plain brown boxes, taking the boxes to UPS, and mailing the boxes. Two of the boxes were intercepted and searched pursuant to a federal search warrant. One box contained approximately 975.9 grams of fentanyl, 6.58 kilograms of methamphetamine, and one box contained 7.48 kilograms of suspected fentanyl. Additionally, SAs observed at

least once confirmed drug courier at the premises located at 4557 W. Adams Blvd with McDonald and observed several unidentified people arrive with bags and meet with McDonald or leave with a bag or a package.

       b.   Moreover, the premises at 4557 W. Adams Blvd do not appear to be a functioning business because there is no furniture or equipment within. On April 22, 2024, SAs noticed that the windows on the southern side of the location that were once boarded up were no longer boarded up and could see that there was nothing on the inside except an interior door. Additionally, despite having a sign outside stating that it is barbershop, SAs conducting surveillance have never seen anyone enter the location and leave looking as though they received a haircut. Finally, on April 8, 2024, SAs received records from The Department of Water and Power of the City of Los Angeles, which showed the subscriber of 4557 W. Adams Blvd is Joyce Volk and has been active since August 1996. Based on a search of law enforcement databases, Joyce Volk is deceased.

    11.  On May 16, 2024, DEA SAs assigned to the Los Angeles Field Division Enforcement Group 4 (EG4) and Southwest boarder Group 4 (SWBG4) executed the arrest warrant on McDonald. McDonald was arrested and brought to the Los Angeles Field Division. While being processed, and after being Mirandized, McDonald stated that he had packaged approximately 20 pounds of crystal methamphetamine at the 4557 W. Adams Blvd, Los Angeles Address, and it should still be there.

5

12. Members of EG4 and SWBG4 set up surveillance at 4557 W. Adams Blvd, Los Angeles in order to execute a federal search warrant on the location. While on surveillance, an unidentified black male, later identified as PEARSON arrived in a white cargo van with CA license plate ending in 8DP. PEARSON entered 4557 W. Adams Blvd through the southern entrance on W. Adams Blvd. Law enforcement observed PEARSON bring out a large Huggees diaper box, place it in the front passenger seat area of his van, and go back into the premises. PEARSON then came back out, carrying a plain brown box that appeared similar to the boxes McDonald was previously seen mailing via UPS.

13. Law enforcement detained PEARSON, and I retrieved the two boxes from the van. Inside the Huggees Box was approximately ninety thousand to a hundred thousand blue pills with an M30 marking on them, suspected of being pressed fentanyl, wrapped in nine separate packages. Inside the plain brown box was another box with a white bucket inside. The white bucket was secured in the box with spray foam and packing peanuts. Inside the white bucket were 10 vacuum sealed bags containing approximately 21 pounds of white crystal-like substance, suspected of being crystal methamphetamine.

14. Agents found two iPhones, SUBJECT DEVICE 1 and SUBJECT DEVICE 2, in PEARSON'S pants pocket. The iPhones were placed into evidence at the Los Angeles Field Division.

15. After waiving his Miranda rights, PEARSON told agents he was at the location because he got a call from McDonald's wife that McDonald had been arrested by law enforcement and that

PEARSON understood that to mean he needed to go "clean out the business." PEARSON admitted he knew the boxes contained controlled substances and stated he was involved to make extra money. PEARSON asserted he was only a small level dealer and typically obtained his controlled substances elsewhere.

### V. TRAINING AND EXPERIENCE ON DRUG OFFENSES

16. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

    a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

    b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

    c. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This

includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

   d. Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

17. As used herein, the term "digital device" includes the SUBJECT DEVICES.

18. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

   a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur

8

after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

  b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

  c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

  d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain

9

"booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

19. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

    a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

    b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

## VII. CONCLUSION

20. For all the reasons described above, there is probable cause to believe that DARIUS EZEKIEL PEARSON committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance. There is also probable cause that the items to be seized described in Attachment B will be

found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  17th day of   May    , 2024.

_____
HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE